# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2020            Decided June 18, 2021

No. 20-5106

M.M.V., ET AL.,
APPELLANTS

v.

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE UNITED
STATES, ET AL.,
APPELLEES

———

Consolidated with 20-5129

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:19-cv-02773)

———

*Caroline J. Heller* argued the cause for appellants. With
her on the briefs were *Gregory P. Copeland*, *Sarah T. Gillman,
Steven G. Barringer*, and *James E. Gillenwater.*

*Erez Reuveni*, Assistant Director, Office of Immigration
Litigation, U.S. Department of Justice, argued the cause for
appellees. With him on the brief were *Ethan P. Davis*, Acting
Assistant Attorney General, and *R. Craig Lawrence* and
*Christopher C. Hair*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, KATSAS, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: The plaintiffs here seek to challenge eleven alleged policies on how asylum officers conduct interviews in expedited-removal proceedings. As to ten of the policies, the district court lacked jurisdiction because either the policy was unwritten or the challenges to it were time-barred. As to the only other policy, which some plaintiffs had timely challenged, the district court permissibly declined to add new plaintiffs with parallel but untimely challenges.

I

A

The Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) sets forth expedited procedures to remove certain inadmissible aliens arriving at the border. 8 U.S.C. § 1225(b)(1). Aliens subject to expedited removal may either claim a fear of persecution or seek to apply for asylum. *Id.* § 1225(b)(1)(A)(i). If an alien does either, an asylum officer must interview the alien and determine whether he has a "credible fear of persecution." *Id.* § 1225(b)(1)(A)(ii), (B)(ii). If the asylum officer finds such a credible fear, the alien must receive a full removal proceeding before an immigration judge, subject to further review in the Board of Immigration Appeals and a court of appeals. *Id.* §§ 1225(b)(1)(B)(ii), 1229a; *Grace v. Barr*, 965 F.3d 883, 887–88 (D.C. Cir. 2020). If the asylum officer finds no credible fear of persecution, the alien may seek review before an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(iii)(III). If the judge then disagrees with the asylum officer, the alien is placed in full removal proceedings.

*See id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 1208.30(g)(2)(iv)(B), (C). If the judge agrees with the asylum officer, the alien may be removed without further review. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A).[1]

The Attorney General and the Secretary of Homeland Security "may by regulation establish additional limitations and conditions … under which an alien shall be ineligible for asylum." 8 U.S.C. § 1158(b)(2)(C). Invoking this authority, the Attorney General and the Secretary jointly published regulations establishing new requirements for seeking asylum. Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019) (Transit Rule). The Transit Rule provides that aliens seeking to enter the United States at the southern border are ineligible for asylum unless they have already applied for asylum in a country through which they traveled while en route. *See id.* at 33,843. The Transit Rule does not bar aliens claiming to fear persecution from seeking other relief such as withholding of removal or protection under the Convention Against Torture. *See id.* at 33,837–38.[2]

---

[1] The Attorney General used to conduct expedited removals and is still referenced in the governing IIRIRA provisions, but Congress has transferred this authority to the Secretary of Homeland Security. 6 U.S.C. § 251(2). The relevant statutory references to the Attorney General now denote the Director of the United States Citizenship and Immigration Services (USCIS), an agency within the Department of Homeland Security. *See id.* §§ 271(b)(3), 275(a)(1), 557.

[2] The Transit Rule was initially issued as an interim rule and was set aside for lack of notice-and-comment procedures. *Capital Area Immigrants' Rights Coalition v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020), *appeal pending*, No. 20-5271 (D.C. Cir.). It was then re-promulgated after a period of public comment. Asylum Eligibility and Procedural Modifications, 85 Fed. Reg. 82,260 (Dec. 17, 2020). A district court has preliminary enjoined the final Transit Rule.

4

B

The original plaintiffs in this case are 126 inadmissible aliens caught trying to enter the country across the southern border. Each of them seeks asylum or claims to fear persecution but has received an adverse credible-fear determination. The plaintiffs do not challenge the Transit Rule itself. Instead, they challenge the government's administration of credible-fear interviews under IIRIRA and the Transit Rule, as allegedly reflected in eleven sub-regulatory policies. The plaintiffs allege the following:

1. Aliens receive no meaningful guidance on how interviews are conducted.

2. Interviewers are improperly trained.

3. Interviewers make decisions before the interview is complete.

4. Interviewers do not produce an adequate record.

5. Interviews are adversarial.

6. Interviews occur without adequate notice.

7. Interviews occur without access to counsel.

8. Interviewers do not apply the proper circuit precedent.

9. Credible-fear determinations are automatically reviewed for fraud.

10. Interviewers do not adequately state the basis for their decisions.

---

*E. Bay Sanctuary Covenant v. Barr*, No. 19-cv-04073-JST, 2021 WL 607869 (N.D. Cal. Feb. 16, 2021).

11. Children are subjected to long, adversarial interviews.

The plaintiffs argue that these policies violate the Immigration and Nationality Act, the Administrative Procedure Act, and the First and Fifth Amendments.

The plaintiffs sought a temporary restraining order barring their removal. The district court granted an administrative stay, but never actually ruled on the TRO. While the administrative stay was in effect, the plaintiffs filed two amended complaints adding some 129 new plaintiffs to the case. They also filed five motions to join 65 additional plaintiffs. For its part, the government filed a motion to dismiss most of the claims by most of the actual and proposed plaintiffs.

The district court granted the motion to dismiss, denied the joinder motions, and lifted the administrative stay for all but 18 of the plaintiffs. *M.M.V. v. Barr*, 456 F. Supp. 3d 193 (D.D.C. 2020). The court held that it lacked jurisdiction to review all but one of the alleged policies, either because the policy was unwritten or because the challenge to it was untimely. *Id.* at 209–20. As to the ninth challenged policy, the court held that only 18 of the plaintiffs had both timely challenged the policy and been themselves subjected to it. The court thus dismissed the challenges made by all other plaintiffs, and it refused to join the would-be plaintiffs. *Id.* at 220–23. The court then entered final judgment under Federal Rule of Civil Procedure 54(b) on the claims of the dismissed plaintiffs. Those plaintiffs appealed, and we have jurisdiction under 28 U.S.C. § 1291.[3]

---

[3] "A 'final decision' under section 1291 ordinarily must resolve every claim of every party in a case." *Attias v. CareFirst, Inc.*, 969 F.3d 412, 416 (D.C. Cir. 2020). In *Attias*, we held that a rule 54(b) certification was inappropriate because the certified claims "appeared highly intertwined with claims still pending below,"

6

II

The district court held that IIRIRA barred its review of ten of the eleven alleged policies because either the policy was unwritten or the challenges to it were untimely. We agree.

A

In a section titled "Matters not subject to judicial review," IIRIRA states that "[n]otwithstanding any other provision of law … no court shall have jurisdiction to review" four specified categories of agency action. 8 U.S.C. § 1252(a)(2)(A). The fourth of these covers, "except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title." *Id.* § 1252(a)(2)(A)(iv). Subsection (e), the referenced exception, permits judicial review of any "regulation, or a written policy directive, written policy guideline, or written procedure issued" under section 1225(b). *Id.* § 1252(e)(3)(A)(ii).

The bar on review of "procedures and policies adopted" to implement section 1225(b)(1) plainly extends to the alleged policies at issue here, which govern credible-fear interviews in expedited-removal proceedings under section 1225(b)(1). The plaintiffs object that if the policies are unwritten, they cannot

including some claims raised by the would-be appellants, and we had "no assistance in the form of an explanation from the district court." *Id.* at 418 (cleaned up). Here, in contrast, the district court certified only the claims of entirely dismissed plaintiffs, and it explained that "[t]he remaining plaintiffs' claims are narrow and separate from the claims that were dismissed." J.A. 515–16. We thus conclude that the rule 54(b) certification was appropriate and created a final order appealable under section 1291.

be "adopted" within the meaning of section 1252(a)(2)(A)(iv). But adoption does not require a writing, as the plaintiffs' own cited dictionary confirms. *Adopt*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1999) ("to accept formally and put into effect"). Moreover, the statutory exception permits review of any "*written* policy directive, *written* policy guideline, or *written* procedure" to implement section 1225(b). 8 U.S.C. § 1252(e)(3)(A)(ii) (emphases added). A bar on reviewing "adopted" policies, subject to an exception permitting review of "written" policies, would make no sense if all "adopted" policies had to be written, for the exception would then be coextensive with the rule.

The plaintiffs also contend that the challenged policies fall outside section 1252(a)(2)(A)(iv) because they were not *lawfully* adopted. The plaintiffs invoke district-court decisions holding that the then-Acting Director of USCIS was unlawfully appointed, *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 24–29 (D.D.C. 2020), and that the Transit Rule was unlawfully promulgated, *Capital Area Immigrants' Rights Coalition v. Trump*, 471 F. Supp. 3d 25, 44–57 (D.D.C. 2020). But section 1252(a)(2)(A)(iv) requires only that the disputed policies be "adopted." And its bar on judicial review of certain "policies adopted" would be ineffective if "adopted" were construed to mean "lawfully adopted" as determined by a reviewing court.

Next, the plaintiffs argue that the alleged policies fall within the exception permitting review of written procedures or policies. But they identify no written documents implementing alleged policies 1, 3, 4, 5, 7, 8, 10, and 11 in their list above. The plaintiffs argue that a writing is unnecessary because subsection (e) permits review of regulations as well as written policy directives, guidelines, and procedures. But the subsection permits review of "such a regulation," and that phrase references "any regulation issued to implement" section

1225(b). 8 U.S.C. § 1252(e)(3)(A). Because issued regulations must be published in the Federal Register, they must be written. *See* 5 U.S.C. § 552(a)(1). Moreover, this reading best harmonizes "such a regulation" with the following phrase "or a written policy directive, written policy guideline, or written procedure," which covers only written items. *See Yates v. United States*, 574 U.S. 528, 543 (2015) ("a word is known by the company it keeps").

The plaintiffs invoke the presumption of reviewability. "Although we presume that agency action is judicially reviewable, that presumption, like all presumptions used in interpreting statutes, may be overcome by specific language that is a reliable indicator of congressional intent." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505 (D.C. Cir. 2019) (cleaned up). Here, Congress obviously foreclosed judicial review: In a section titled "Matters not subject to judicial review," it provided that "no court shall have jurisdiction to review" several broad categories of agency action, subject only to exceptions specifically set forth. 8 U.S.C. § 1252(a)(2)(A). For the reasons explained above, we think it clear that one of these review bars applies, and its exception does not.

The plaintiffs also invoke the constitutional-doubt canon. But that interpretive tool does not apply if the statute at issue is unambiguous, *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018), as the provisions discussed above are. In any event, our reading of section 1252(a)(2) does not raise any constitutional doubts. Just last term, the Supreme Court confirmed that aliens apprehended while trying to enter the country have no due process rights beyond what Congress has provided by statute, and that section 1252 thus does not violate due process by precluding judicial review of an "allegedly flawed credible-fear proceeding." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1981–83 (2020).

Alternatively, the plaintiffs argue the district court erred in finding that the challenged policies noted above were unwritten. To the extent that a jurisdictional dismissal is based on disputed facts, we review the district court's factual findings for clear error. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). The government submitted an affidavit from the Deputy Chief of the Asylum Division of USCIS, who averred that a search of agency records revealed no written directives related to these challenged policies. The plaintiffs' competing evidence showed only that the policies had been regularly applied. The district court carefully reviewed this evidence and concluded that the plaintiffs failed "to bridge the gap between instances of certain conduct—or even an apparently consistent or settled practice—and the existence of a *written* directive calling for that conduct." *M.M.V.*, 456 F. Supp. 3d at 214. On this record, that finding was not clearly erroneous.[4]

The plaintiffs further contend that the district court should have separately considered whether the jurisdictional bar covers their First Amendment and APA claims. But the bar is keyed to the nature of the challenged agency action, not the basis for the challenge. The plaintiffs invoke the First

---

[4] For their claim that interviewees receive no meaningful orientation, the plaintiffs identified Form M-444 as the governing written policy. This form, which has long been provided to aliens to explain the interview process, was last updated in May 2019. To make their challenge timely, the plaintiffs contend that the form became outdated on July 16, 2019, when the Transit Rule took effect. But, as the district court explained, the claim thus asserts that the government should have updated the form, and it is barred because the plaintiffs identify no written directive to use an outdated form. *See M.M.V.*, 456 F. Supp. 3d at 218.

Amendment and the APA to contend that the challenged policies are unlawful, which still amounts to a challenge to "policies adopted" to implement section 1225(b)(1). 8 U.S.C. § 1252(a)(2)(A)(iv). Likewise, while the plaintiffs characterize their APA challenge as procedural rather than substantive, the bar plainly covers both kinds of challenges.

Finally, the plaintiffs contend that they were entitled to jurisdictional discovery. But they did not move for discovery below, so they cannot raise this argument on appeal. *See Dunning v. Quander*, 508 F.3d 8, 11 (D.C. Cir. 2007).

B

The second alleged policy was not timely challenged. Section 1252(e)(3) permits legal challenges to "a regulation, or a written policy directive, written policy guideline, or written procedure" to implement expedited-removal proceedings under section 1225(b), 8 U.S.C. § 1252(e)(3)(A)(ii), but it requires any such challenge to be "filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure ... is first implemented," *id.* § 1252(e)(3)(B). The district court correctly concluded that this deadline jurisdictionally barred review of the second alleged policy.

The plaintiffs seek to challenge what they describe as a new policy of allowing untrained employees of the United States Customs and Border Protection (CBP) to conduct asylum interviews. The relevant writing is an agreement signed by USCIS and CBP on July 10, 2019. This agreement permits CBP agents to conduct credible-fear interviews upon receiving adequate training to act as asylum officers. On July 15, 2019, CBP agents began conducting interviews pursuant to the agreement. On September 9, 2019, CBP agents began

conducting interviews at the South Texas Family Residential Center, where the original plaintiffs were interviewed.

The plaintiffs filed this lawsuit on September 16, 2019. We need not consider whether the policy was first implemented on July 10, when the agreement became effective, or July 15, when CBP agents began conducting interviews pursuant to it, for the September 16 challenge was untimely either way. The plaintiffs argue that the policy was not implemented until September 9, when CBP agents began conducting interviews at the facility where they were detained. But the same written agreement governed all interviews by CBP agents. And the statutory time limit begins to run when a "written policy directive" is "first implemented," not when it is first applied to specific facilities or aliens. 8 U.S.C. § 1252(e)(3). The district court correctly held that the plaintiffs' challenge to the use of CBP agents to conduct asylum interviews was untimely.[5]

The plaintiffs object that their claims are subject to equitable tolling. But jurisdictional filing deadlines are not subject to tolling, *see Bowles v. Russell*, 551 U.S. 205, 213–15 (2007), and the time limit here is jurisdictional. In *American Immigration Lawyers Association v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998) (*AILA*), the district court held that the 60-day time limit in section 1252(e)(2)(B) "is jurisdictional rather than a traditional limitations period." *Id.* at 47. We affirmed that conclusion "substantially for the reasons stated in the court's thorough opinion." 199 F.3d 1352, 1357 (D.C. Cir. 2000).

The plaintiffs urge that *AILA* has been overtaken by recent Supreme Court decisions stressing that time limits are jurisdictional only if clearly stated as such. *United States v.*

---

[5] The plaintiffs do not challenge the district court's holding that their challenge to the sixth alleged policy was also untimely.

*Kwai Fun Wong*, 575 U.S. 402, 409 (2015). This clear-statement rule is satisfied if the statute expressly "speak[s] in jurisdictional terms," *Musacchio v. United States*, 577 U.S. 237, 246 (2016), or "conditions the jurisdictional grant on the limitations period," *Kwai Fun Wong*, 575 U.S. at 412.

Section 1252 does both. First, it states that "no court shall have jurisdiction to review" agency "procedures and policies" to implement the expedited removal of aliens, "except as provided in subsection (e)." 8 U.S.C. § 1252(a)(2)(A). Subsection (a) thus conditions jurisdiction on satisfaction of the requirements of subsection (e). In turn, the first paragraph of subsection (e) likewise provides that "no court may … enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." *Id.* § 1252(e)(1)(A). This formulation—restricting the courts rather than conferring rights and duties on the parties—is also framed in jurisdictional terms. *Kwai Fun Wong*, 575 U.S. at 410–11 & n.4 ("jurisdictional statutes speak about jurisdiction, or more generally phrased, about a court's powers"). And it too conditions jurisdiction on satisfying the requirements that follow later in the subsection. Paragraph (3) of the subsection follows by authorizing judicial review "limited to" certain challenges to statutes, regulations, and written policies, 8 U.S.C. § 1252(e)(3)(A), with a deadline for "[a]ny action instituted under this paragraph," *id.* § 1252(e)(3)(B). Section 1252 thus twice conditions the relevant "jurisdictional grant" upon the associated "limitations period," which makes the time limit itself jurisdictional. *Kwai Fun Wong*, 575 U.S. at 412; *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514–15 (2006) (statutory requirement is jurisdictional if made a "threshold ingredient" of jurisdiction); *Myers v. Comm'r*, 928 F.3d 1025, 1035 n.‡ (D.C. Cir. 2019) (timeliness is jurisdictional if the

"grant of jurisdiction is followed by ... [a] clause that expressly conditions jurisdiction upon timely filing").[6]

## III

The ninth challenged policy provides for credible-fear findings favorable to an alien to be reviewed by USCIS's Fraud Detection and National Security Directorate. This policy was first implemented on August 30, 2019. And it was timely challenged by the plaintiffs named in the original and first amended complaints. The district court concluded that the parallel challenges raised by all other plaintiffs or proposed plaintiffs were jurisdictionally untimely. The court thus dismissed the challenges to the fraud-review policy raised by the plaintiffs added to the second amended complaint. *M.M.V.*, 456 F. Supp. 3d at 220. Likewise, it denied the pending joinder motions on behalf of plaintiffs proposed to be added to the case even later. *Id.* at 222–23.[7]

---

[6] The government argues that the plaintiffs' challenge to the July 2019 agreement is moot because that agreement has expired and been replaced by a later, materially different agreement made in January 2020. We do not reach the mootness question because we conclude that the challenges are jurisdictionally time-barred in any event. Nothing in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), prevents us from addressing one jurisdictional question before another. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). We note that the plaintiffs could have, but did not, raise a separate challenge to the January 2020 agreement.

[7] The court also dismissed challenges to the fraud-review policy raised by plaintiffs in the original and first amended complaints who did not receive favorable credible-fear determinations overruled by the Directorate. *See M.M.V.*, 456 F. Supp. 3d at 222. The plaintiffs do not challenge that ruling.

To preserve the later challenges, the plaintiffs invoke the rule that if many plaintiffs seek the same relief and at least one of them has Article III standing, the court need not determine whether others also do. *See, e.g.*, *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (*FAIR*). Assuming the *FAIR* rule governs the determination of statutory jurisdiction as well as Article III standing, it is nonetheless inapplicable for two reasons. First, the rule does not apply if each plaintiff seeks "additional" individualized relief. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017); *see Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross"); *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 216 (4th Cir. 2017) (each plaintiff seeking "individualized relief" must prove Article III standing). Here, the plaintiffs seek an order enjoining the government from removing any one plaintiff without providing that plaintiff with further individualized adjudicatory process. J.A. 66–67. Second, the *FAIR* line of cases stands only for the proposition that a court "need not" decide the standing of each plaintiff seeking the same relief. *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998). But it does not *prohibit* the court from paring down a case by eliminating plaintiffs who lack standing or otherwise fail to meet the governing jurisdictional requirements. *See, e.g.*, *Thiebaut v. Colorado Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011) ("nothing … suggests that a court *must* permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing"); Bruhl, *One Good Plaintiff Is Not Enough*, 67 Duke L.J. 481, 492 (2017) ("Courts do not treat the one-plaintiff rule as mandatory."). Here, with one legal ruling, the district court sensibly winnowed away the jurisdictionally time-barred claims of more than 150 plaintiffs.

The plaintiffs further contend that the 60-day filing deadline governs only the filing of an "action instituted under"

paragraph (3) of section 1252(e). 8 U.S.C. § 1252(e)(3)(B). In their view, so long as one plaintiff institutes a timely "action," other plaintiffs may freely join it later, even if the filing deadline would have run had they been the initial filers.

This argument is foreclosed by *AILA*. In that case, the plaintiffs filed an amended complaint "adding several individual plaintiffs" more than 60 days after the challenged expedited-removal policies had been first implemented. *See* 18 F. Supp. 2d at 46–47. The district court dismissed the claims of these plaintiffs as untimely under section 1252(e)(3)(B), even though other plaintiffs in the case had timely challenged the policies. It reasoned that "Congress designed the statute so that the 60 days ran from a fixed point, the initial implementation of the challenged provisions, rather than from the date of application of IIRIRA to a particular alien." *Id.* at 47. Moreover, it continued, because the 60-day deadline was jurisdictional, the amended complaint could not "relate[] back" under Federal Rule of Civil Procedure 15(c). *Id.* On review, this Court specifically addressed "appeals by the individual aliens who filed late and for that reason had their claims dismissed." 199 F.3d at 1356–57. And we "affirm[ed] the dismissal of these claims substantially for the reasons stated in the [district] court's thorough opinion." *Id.* at 1357 (citing 18 F. Supp. 2d at 46–47). The plaintiffs seek to distinguish *AILA* on the ground that the district court there ended up dismissing all claims brought by all plaintiffs. Even so, the district court there specifically held that the claims of each plaintiff must be filed within the 60-day time limit, and we specifically affirmed on that basis.

The plaintiffs separately challenge the district court's refusal to join the proposed plaintiffs. But as explained above, the challenges by the proposed plaintiffs to the fraud-review policy also were untimely. The district court thus correctly

concluded that joinder would have been futile because the disputed claims were untimely and there was no possibility of equitable tolling. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 794–95 (D.C. Cir. 1983). In their reply brief, the plaintiffs object that their second amended and proposed later complaints relate back to their original complaint under rule 15(c). Because the plaintiffs raised this point neither in the district court nor in their opening brief on appeal, it is twice forfeited. *See McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010). And under reasoning in *AILA* that we specifically affirmed, it is also meritless. *See* 199 F.3d at 1356–57; 18 F. Supp. 2d at 46–47.

*Affirmed.*