# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 25, 2023        Decided May 12, 2023

No. 22-5071

I.M.,
APPELLANT

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-03576)

———

*Jeffrey B. Dubner* argued the cause for appellant. With him on the briefs were *Sean A. Lev, Keren H. Zwick, Mark Fleming, James H. Barker, L. Allison Herzog, Joseph Begun,* and *Jacob P. Rush.*

*Sabrineh Ardalan* was on the brief for *amicus curiae* Harvard Immigration and Refugee Clinical Program in support of appellant.

*Brian C. Ward*, Senior Litigation Counsel, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant

Attorney General, and *Erez Reuveni,* Assistant Director. *Lauren C. Bingham*, Senior Litigation Counsel, entered an appearance.

Before: RAO and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER, with whom *Circuit Judge* RAO joins except as to Part II.C.

WALKER, *Circuit Judge*: The Government removed IM from the United States. Back in his home country, IM filed a habeas petition, arguing that his removal was unlawful. But habeas proceedings are available only when a petitioner is in government custody. Because IM was out of custody, he could not use habeas to challenge his removal.

## I. Background

### A. Statutory Scheme

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 created an expedited removal process. It allows the government to quickly remove aliens who arrive in the United States without the right paperwork. If an alien arrives without a valid visa, or having misrepresented facts to secure a visa, an immigration officer may remove him "without further hearing or review" — unless he claims asylum. 8 U.S.C. § 1225(b)(1)(A)(i); *id.* § 1182(a)(6)(C), (a)(7)(A)(i)(I).

If an alien claims asylum, the officer must "refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii). If that officer determines the alien has a credible fear of persecution, the alien "shall be detained for further consideration of the application for asylum." *Id.*

§ 1225(b)(1)(B)(ii).  If not, the asylum officer "shall order the alien removed."  *Id.* § 1225(b)(1)(B)(iii)(I);  8  C.F.R. § 1208.30(g)(2)(iv)(A).

Because expedited removal is designed to be efficient, Congress tightly restricts judicial review of expedited removal orders.  "Judicial review" of expedited removal orders is only "available  in  habeas  corpus  proceedings."   8  U.S.C. § 1252(e)(2); *see also id.* § 1252(a)(2)(A)(i)-(ii), (iv) ("no court shall have jurisdiction to review" expedited removal orders "except as provided in subsection (e)").

## B. IM's Case

IM is a farmer with an interest in sustainable agriculture. To further his work, he got a visa and visited America to learn from agriculturalists.  His trip went without a hitch.  A year later, he returned to the country using the same visa to collaborate  with  another  agriculturalist.   That  trip  didn't  go  so smoothly.

When IM arrived in America, an immigration officer denied him entry.  The officer found that IM planned on getting paid by a farmer, even though his visa did not allow him to work.  So the officer placed IM in expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1).

Unwilling to leave, IM claimed asylum.  He said he feared returning to his home country because he had "twice received death threats."  JA 20.

An immigration officer denied IM's asylum application. An immigration judge affirmed, and IM was removed.[1]

Back in his home country, IM filed a habeas petition, invoking 8 U.S.C. § 1252(e)(2). In it, he claimed that the officer who ordered him removed was improperly appointed. According to IM, that officer wielded significant power, making him an inferior officer who should have been appointed by the President or the head of a department. U.S. Const. art. II, § 2, cl. 2.

The district court dismissed IM's petition. It concluded that habeas proceedings are available only to those in government custody. Because IM did not file his petition until he was back home and out of custody, the court lacked jurisdiction to hear his case.[2]

IM appealed to this court. We review the district court's decision to dismiss IM's suit de novo. *Piersall v. Winter*, 435 F.3d 319, 321 (D.C. Cir. 2006). Because a petitioner must be in government custody to initiate "habeas corpus proceedings," we affirm. 8 U.S.C. § 1252(e)(2).

## II. Custody Is an Essential Jurisdictional Requirement

Courts may generally review orders removing aliens from the United States. 8 U.S.C. § 1252(a)(1). But *expedited*

---

[1] That evening, IM received an incomplete and unsigned removal order. Though he requested a final order, he did not get one until he was about to board the plane on his way out of the United States.

[2] The district court held that IM did not have standing to bring his Appointments Clause challenge because he was not in custody. Because we resolve the case on other jurisdictional grounds, we do not address standing here. *McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) ("we can take up jurisdictional issues in any order").

removal orders are different. *Id.* § 1252(a)(2)(A). An alien must challenge expedited removal orders through the procedures provided in § 1252(e)(2). *Id.* And that section provides a limited avenue for review: "Judicial review [of expedited removal determinations] is available in habeas corpus proceedings." *Id.* § 1252(e)(2).

So here, we must interpret the phrase "habeas corpus proceedings" to decide when such proceedings are available.[3]

## A. Section 1252 Does Not Grant Jurisdiction

Start with the structure of § 1252. It lays out the circumstances in which aliens can seek judicial review of expedited removal orders. But it does not grant jurisdiction.

Instead, § 1252 acknowledges that existing jurisdictional statutes allow judicial review of most removal orders. 8 U.S.C. § 1252(a)(1). It then *strips* jurisdiction for review of expedited removal orders, with one narrow exception: "Notwithstanding any other provision of law . . . no court shall have jurisdiction to review" expedited removal orders "except as provided in subsection (e)." *Id.* § 1252(a)(2)(A); *Patel v. Garland*, 142 S. Ct. 1614, 1621 (2022) (§ 1252(a)(2) "strips courts of jurisdiction").

Subsection (e)(2) is thus an "except[ion]" to § 1252's jurisdiction-stripping provision. 8 U.S.C. § 1252(a)(2)(A). It recognizes that "[j]udicial review . . . is available in habeas corpus proceedings," where those proceedings are made available

---

[3] The Government argues that IM's Appointments Clause challenge is not the kind of claim authorized by § 1252(e)(2). We do not decide that issue because we resolve the case on other jurisdictional grounds.

by existing jurisdictional statutes. *Id.* § 1252(e)(2). It does not give a court power to issue a writ of habeas corpus.

Textual clues confirm that reading. Congress's use of the present tense — "is available" — suggests that (e)(2) cross-references other existing grants of habeas jurisdiction. And unlike jurisdictional statutes, (e)(2) "does not speak to a court's authority." *EPA v. EME Homer City Generation*, 572 U.S. 489, 512 (2014). That is a stark contrast to statutes that unambiguously confer habeas jurisdiction. *See* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by the Supreme Court . . . the district courts and any circuit judge.").

In other words, (e)(2) requires an alien to rely on *another* jurisdiction-conferring statute to bring habeas proceedings. Once he has done that, (e)(2) comes into play, letting him make specific challenges to his expedited removal order. § 1252(e)(2)(A)-(C) (listing three kinds of challenges an alien may make to a removal order once in habeas proceedings).

**B. 28 U.S.C. § 2241 Requires Custody**

Here, the only grant of habeas jurisdiction that we or the parties could identify is 28 U.S.C. § 2241. It gives federal courts the authority to issue "[w]rits of habeas corpus . . . within their respective jurisdictions." 28 U.S.C. § 2241(a).[4]

---

[4] Other statutes authorize federal courts to consider habeas petitions from state prisoners, 28 U.S.C. § 2254, and those in "detention by order of an Indian tribe," 25 U.S.C. § 1303. But those statutes plainly do not authorize IM to initiate habeas proceedings. Similarly, we need not concern ourselves with state habeas proceedings because state courts cannot use such proceedings "to interfere with the authority of the United States." *Tarble's Case*, 80 U.S. (13 Wall.) 397, 404 (1872).

Section 2241 has long regulated federal courts' habeas jurisdiction. Congress enacted an early version of § 2241 in the Judiciary Act of 1789. 1 Stat. 73, 81-82 (1789). Since then, "Congress [has] had continual concern for the Great Writ," passing a series of amendments to the Judiciary Act that refine federal court's authority to issue the writ. *Carbo v. United States*, 364 U.S. 611, 615-17 (1961) (discussing that history). Given Congress's practice of "tightly regulat[ing]" habeas jurisdiction by statute, we must pay careful attention to the limits in § 2241. *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1974 n.20 (2020).

One limit is custody. The text of § 2241 assumes that the writ would extend to a "prisoner," and a prisoner must of course be in "custody." 28 U.S.C. § 2241(c)(1)-(3). Interpreting that text, the Supreme Court has held that a petitioner must be "in custody . . . at the time his petition is filed" for a court to have jurisdiction under § 2241. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (cleaned up); *see also* 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained.").

So if § 2241 is the only relevant statute authorizing a federal court to conduct "habeas corpus proceedings" over IM, then IM must be in custody when his petition is filed to fall within the court's jurisdiction.

## C. Custody Is Required By § 1252(e)(2)

Even if § 2241 is not the only relevant statute granting jurisdiction for "habeas corpus proceedings," custody still required by 8 U.S.C. § 1252(e)(2). That subsection carves out exceptions to the jurisdiction stripping of § 1252(a)(2)(A). To qualify for those exceptions, a claim must be pursued in "habeas corpus proceedings." 8 U.S.C. § 1252(e)(2). If a

petitioner does not meet the exception's requirements, then the jurisdiction-stripping provision applies, and we do not have jurisdiction. *See M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021) ("Subsection (a) thus conditions jurisdiction on satisfaction of the requirements of subsection (e)"); *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 381 (6th Cir. 2017) (court lacked jurisdiction because an exception did not apply and thus "the general limitation on jurisdiction of § 1252(a)(2)(B)(ii) applies").

For hundreds of years, the phrase "habeas corpus proceedings" has referred to a mechanism for challenging the government's detention of a person in its custody. So when Congress used that phrase in (e)(2), it referred to a specific and established form of proceeding that requires custody.

### 1. "Habeas Corpus" Has an Established Meaning

Start with the text. "Habeas corpus" is Latin for "you have the body." *Webster's New International Dictionary* 1121 (2d ed. 1945). The writ's title accurately captures its function. It is an order directing a custodian to produce (habeas) a prisoner's body (corpus). *Cf. Clements v. Florida*, 59 F.4th 1204, 1218 (11th Cir. 2023) (Newsom, J., concurring) ("'habeas corpus'" is "plainly a reference to the subject's actual, physical detention").

The writ's history confirms that custody is an essential element. *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 93-94 (1807) ("the meaning of the term *habeas corpus*" in a statute is "unquestionably" informed by "the common law"). Because other courts and scholars have detailed that history, we discuss only a few highlights. *See, e.g.*, *Thuraissigiam*, 140 S. Ct. at 1971-81; J. Baker, *An Introduction to English Legal History* 156-58 (5th ed. 2019).

Habeas has its origins in the Assize of Clarendon of 1166, which planted the seeds of England's common-law system. Henry II allowed "Justices" to order local sheriffs to "bring" men in their custody "before the Justices," along with "two lawful men" who could "bear record" as to why the prisoner was "taken." Assize of Clarendon § 4. "Over time," the writ of habeas corpus "came to be understood both as a right to be free from arbitrary detention and as a procedural writ." *Thuraissigiam*, 140 S. Ct. at 1983-84 (Thomas, J., concurring).[5]

Habeas flourished as a prerogative writ in Stuart England. It was a crucial procedure to "ensure due process" at a time when "English monarchs jailed their subjects summarily and indefinitely." *Brown v. Davenport*, 142 S. Ct. 1510, 1520-21 (2022). By issuing the writ, a court would "command[]" the "person detaining another" to "produce the body of the prisoner." 3 William Blackstone, *Commentaries on the Laws of England* 131 (1768). The court could then decide if the government had legal authority to detain the prisoner. *Id.* at 131-32. To illustrate the operation of the writ, Blackstone described the King's Bench denying a habeas petition filed by a person "confined by the court of admiralty for piracy," because there were "sufficient grounds" to justify his detention. *Id.* at 132.

---

[5] "By the end of the 16th century, the English connected the common-law writ of habeas corpus to liberty. Specifically, it was associated with the guarantee in Magna Carta that '[n]o free person (*Nullus liber homo*) shall be taken or imprisoned, or disseised or outlawed or exiled, or in any way destroyed . . . except by the lawful judgment of his peers or by the law of the land.'" *Id.* (quoting Baker, *supra*, at 157, n. 76, 506).

When Parliament codified some applications of the writ, it also required custody. To remedy the abuses of the Star Chamber, the Habeas Corpus Act of 1640 allowed anyone "committed" or "imprison[ed]" by executive order — a "command or Warrant of the King[]" — to petition the court to determine the "true cause" of his imprisonment. 16 Car. 1 c 10 § VI. Similarly, when Parliament codified habeas writs challenging pretrial detention, it said habeas should be available to give "speedy Releife" to "all persons imprisoned." Habeas Corpus Act of 1679, 31 Cha. 2 c 2 § I. The Act stipulated that habeas writs should be "directed unto any Sheriffe or Sheriffes Goaler Minister or other Person whatsoever for any person in his or their Custody." *Id.* And the remedy for a successful petition was to "discharge" the prisoner from his imprisonment. *Id.* §§ II, VII.

Custody was also a central feature of habeas in the states. "Virtually all American habeas corpus legislation had its genesis in the English Habeas Corpus Act of 1679." Dallin H. Oaks, *Habeas Corpus in the States — 1776-1865*, 32 U. Chi. L. Rev. 243, 251 (1965); *see also* 3 Joseph Story, *Commentaries on the Constitution of the United States*, §§ 1333, 1335 (Boston, 1833) (the "great and celebrated writ, used in all cases of illegal confinement" was "incorporated into the jurisprudence of every state in the Union"). As shown above, that Act required custody. Reflecting those English roots, state courts held that the writ was unavailable "to persons who were not actually in custody or imprisoned, or who were out on bail." *State v. Buyck*, 2 Bay 563, 564 (S.C. 1804); *see also Respublica v. Arnold*, 3 Yeates 263, 266 (Pa. 1801) (opinion of Yeates, J.) (noting that the writ was available to "a *prisoner* under

*commitment*" and that it would be "perfectly novel" to allow a person on bail to invoke it).[6]

The understanding that "habeas corpus proceedings" are available only to those in custody continues to this day. When § 1252(e)(2) became law in 1996, the "primary function of the writ" was to secure "release from unlawful imprisonment." Habeas Corpus, *Black's Law Dictionary* 709 (6th ed. 1990). And the Supreme Court recently confirmed that "[h]abeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 140 S. Ct. at 1963. That makes sense. Because "the essence of habeas corpus is an attack by a person in custody," it cannot be used to challenge "something other than the fact or length of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973).[7]

---

[6] *See also Wales v. Whitney*, 114 U.S. 564, 571-72 (1885) ("Something more than moral restraint is necessary to make a case for *habeas corpus*. There must be actual confinement or the present means of enforcing it."); Story, *supra*, §§ 1333-36 (habeas is "the appropriate remedy to ascertain, whether any person is rightfully in confinement or not, and the cause of his confinement"); Rollin C. Hurd, *Treatise on the Right of Personal Liberty, and on the Writ of Habeas Corpus and the Practice Connected With It* 243 (1858) ("The production of the body constitutes an essential element of this proceeding.").

[7] There are, of course, "various writs of *habeas corpus*." *Ex parte Bollman*, 8 U.S. at 97; *see also Black's Law Dictionary* 709-10 (6th ed. 1990) (defining different types of habeas); 3 Blackstone, *supra* at 130-31 (same). The one clearly at issue here is "habeas corpus ad subjiciendum," meant to address "all manner of illegal confinement." *Black's Law Dictionary*, *supra* at 709-10. But as a general matter, the other types of habeas also require custody, as they involve producing the body of a "prisoner" to testify, prosecute, deliberate, or satisfy. *See id.*; *cf.* 28 U.S.C. § 2241(c)(5) ("The writ of habeas

From the first "habeas corpus proceedings" in 1166 to the present day, custody has been an essential requirement. So when Congress used that phrase in § 1252(e)(2), an ordinary reader would have understood it to have its usual meaning — a proceeding in which a person in custody challenges his detention. *Sekhar v. United States*, 570 U.S. 729, 733 (2013) (when Congress uses a term with an established meaning, it "brings the old soil with it") (cleaned up).[8]

If Congress had wanted to depart from hundreds of years of legal history by allowing an alien who is not in custody to use habeas proceedings, it would have said so.

**2. IM's Counterarguments Are Unpersuasive**

Though IM makes a few counterarguments, they are not strong enough to show that Congress meant "habeas corpus proceedings" to bear a novel meaning in § 1252(e)(2).

First, IM suggests that if the phrase "habeas corpus proceedings" inherently includes a custody requirement, it would render express custody requirements in other habeas statutes superfluous. But there is no surplusage. The argument rests on the false premise that other provisions include an express

corpus shall not extend to a prisoner unless . . . necessary to bring him into court to testify or for trial.").

[8] Indeed, IM acknowledges that habeas proceedings have "unique" and long-standing procedures and that those procedures apply to § 1252(e)(2). Reply Br. 20 (cleaned up). He thus concedes that the phrase "habeas corpus proceedings" carries old soil with it. And that concession gives the game away. IM has no convincing explanation for why the phrase "habeas corpus proceedings" would carry over some long-standing limits on habeas but not the custody requirement.

custody limitation. It would be more accurate to say those provisions implicitly assume custody is required, just as (e)(2) does. For example, consistent with the traditional understanding of the writ, § 2241 assumes the petitioner is necessarily a "prisoner," and uses the words "in custody" to describe the various legal authorities for detention that can be challenged. *See, e.g.*, 28 U.S.C. § 2241(c)(1) ("in custody *under or by color of the authority of the United States*") (emphasis added); *id.* § 2241(c)(3) ("in custody *in violation of the Constitution or laws or treaties of the United States*") (emphasis added).

IM's argument also misunderstands (e)(2)'s role in the statutory scheme. As we have explained, (e)(2) does not create "habeas corpus proceedings." Instead, it relies on other statutes to do that job. *See* 28 U.S.C. § 2241. Given that context, it makes sense that Congress would use a shorthand to describe habeas proceedings in (e)(2), but spell out the requirements for such proceedings in jurisdiction-conferring statutes like § 2241.[9]

Second, IM argues that the predecessor statute to (e)(2) included the word "custody," which Congress removed when it enacted (e)(2). *Cf.* 8 U.S.C. § 1105a(a)(10) (1994) ("any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings"). So, he says, any custody requirement was intentionally repealed by Congress. That argument, however, is implausible. Congress repealed that law and replaced it with "a new (and significantly

---

[9] *Those requirements presume custody. See* 28 U.S.C. § 2254(a) ("a person in custody pursuant to the judgment of a State court"); *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010); 25 U.S.C. § 1303 ("to test the legality of his detention by order of an Indian tribe"); *Tavares v. Whitehouse*, 851 F.3d 863, 871 (9th Cir. 2017) ("detention" is an even narrower custody requirement for Section 1303).

more restrictive) one." *Nken v. Holder*, 556 U.S. 418, 424-25 (2009). And the old § 1105a dealt with reviews of deportation orders generally. *See Quezada v. I.N.S.*, 898 F.2d 474, 476 (5th Cir. 1990). The expedited removal sections at issue here are new, so nothing was "removed." And, as just explained, the very phrase "habeas corpus" in (e)(2), considered together with the history of the writ, implies custody over the body of a prisoner. So Congress did not need to use the magic word "custody." Rather, we would need a far clearer textual clue to conclude that Congress wanted to depart radically from the writ as it had been understood for centuries.

Third, IM notes that it would make little sense for (e)(2) to have a custody requirement because release is not an available remedy. Instead, a successful petitioner gets a removal hearing. *See* 8 U.S.C. § 1252(e)(4); *id.* § 1229a. True enough. But a removal hearing *can* result in release. If an alien shows that he is not removable, the government can no longer detain him. So a habeas proceeding under (e)(2) is the first step toward release. That process is not an outlier. Release is not "the exclusive result of every writ" because "it is often appropriate to allow the executive to cure defects in a detention." *Thuraissigiam*, 140 S. Ct. at 1981 (cleaned up).

Finally, IM contends that a custody requirement would all but prevent judicial review of expedited removal orders. True, expedited removal is a quick process and aliens are not in custody for long. *See* 8 U.S.C. § 1231(c)(1) (immediate removal where possible). But custody often lasts for a few weeks — IM was in custody for nearly a month. That is plenty of time to file a petition. And if an alien is deported before his petition is resolved, collateral consequences can prevent it from becoming moot. *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998). So though the opportunity for review is limited, it is not illusory.

### III. IM Was Not In Custody

IM filed his habeas petition after he was removed from the United States. So he was not in custody. *See, e.g.*, *Kumarasamy v. Attorney General*, 453 F.3d 169, 173 (3d Cir. 2006) (aliens returned to their home country are not in custody); *Samirah v. O'Connell*, 335 F.3d 545, 549-51 (7th Cir. 2003) (same).

Rather than contest that point, IM contends that a removed alien may file a habeas petition if "extreme circumstances" prevented him from filing while he was in custody. We disagree. Lower federal courts are created by Congress, and they have only the jurisdiction Congress grants — no more, no less. U.S. Const. Art. III, § 1.

Of course, the Supreme Court has acknowledged that a habeas petitioner need not be in "physical custody" to seek the writ. *Jones v. Cunningham*, 371 U.S. 236, 239 (1963). Other restraints on his liberty will suffice for constructive custody. *Id.* at 239-40. But the Supreme Court has carefully limited the constructive-custody doctrine. *Maleng*, 490 U.S. at 492. It has expressly rejected an approach to habeas jurisdiction in which a court could "depart[ ] from the jurisdictional rules" by finding that "the circumstances of a given case are 'exceptional,' 'special,' or 'unusual.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 450 (2004). As Chief Justice Marshall put it, "the power to award the writ by any of the courts of the United States, must

be given by written law" — it may not be judicially created. *Ex parte Bollman*, 8 U.S. at 94.[10]

Because an extreme-circumstances exception has no statutory basis, we may not adopt it. Creating exceptions to jurisdictional rules is a job for Congress, not the courts.[11]

\* \* \*

An alien may seek judicial review of an expedited removal order in "habeas corpus proceedings." 8 U.S.C. § 1252(e)(2).

---

[10] IM has brought to our attention only one circuit that has granted relief to a removed alien under an extreme-circumstances exception in a published opinion. *See Singh v. Waters*, 87 F.3d 346, 349-50 (9th Cir. 1996); *Gutierrez v. Gonzales*, 125 F. App'x 406, 414-16 (3d Cir. 2005) (applying the exception "where strong policy concerns weigh in favor of doing so"); *cf. Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011) (recognizing the exception but holding that it did not apply to the facts at issue). But when that circuit said that "denial of entry amounts to a restraint on liberty," *Subias v. Meese*, 835 F.2d 1288, 1289 (9th Cir. 1987), it did so "with little analysis," *Samirah*, 335 F.3d at 550. In contrast, other federal courts have correctly refused to extend the constructive-custody doctrine to allow removed aliens to file habeas petitions. *See, e.g.*, *id.* at 549-50 ("Although the word 'custody' is elastic, all definitions of it incorporate some concept of ongoing control, restraint, or responsibility by the custodian. . . . Samirah is, in some sense, restrained insofar as he cannot enter the United States. But that restraint, such as it is, only puts him on par with the billions of other non-U.S. citizens around the globe who may not come to the United States without the proper documentation.").

[11] IM suggests that failing to adopt the exception could produce harsh results. He contends that where, as here, an immigrant does not get a final removal order until he is out of government custody, he cannot seek judicial review in "habeas corpus proceedings." But in contrast

And habeas corpus proceedings are available only to those in custody.

IM was not in custody. So the district court lacked jurisdiction to consider his habeas petition. We thus affirm.

*So ordered.*

---

to other immigration-review provisions, § 1252(e)(2) does not require an alien to wait until he has a final order of removal. *Compare* 8 U.S.C. § 1252(e)(2)(B) (allowing a court to review "whether the petitioner was ordered removed"), *with* § 1252(a)(1) (courts may review "final order[s] of removal"). And even if an alien *is* required to wait for a final order, he may be able to preemptively file a petition for habeas corpus and ask the court to stay proceedings until he has a final order. Plus, where the government flouts a habeas court's orders, remedies like mandamus and contempt are available.