# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 6, 2019        Decided August 11, 2020

No. 19-7020

CHANTAL ATTIAS, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED, ET AL.,
APPELLANTS

v.

CAREFIRST, INC., DOING BUSINESS AS GROUP
HOSPITALIZATION AND MEDICAL SERVICES, INC., DOING
BUSINESS AS CAREFIRST OF MARYLAND, INC., DOING BUSINESS
AS CAREFIRST BLUECROSS BLUESHIELD, DOING BUSINESS AS
CAREFIRST BLUECHOICE, INC., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00882)

———

*Matthew Wayne Stonestreet* argued the cause for appellants. With him on the briefs were *Jonathan B. Nace*, *Christopher T. Nace*, and *Troy N. Giatras*.

*Marc Rotenberg* and *Alan Butler* were on the brief for *amicus curiae* Electronic Privacy Information Center in support of appellants.

*Matthew O. Gatewood* argued the cause for appellees. With him on the briefs was *Robert D. Owen*.

Before: SRINIVASAN, *Chief Judge*, and GRIFFITH and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:   After hackers allegedly stole sensitive customer information from a health insurer's data system, seven customers brought a litany of tort, contract, and statutory claims against the company.   The district court dismissed all claims of five plaintiffs and most claims of two plaintiffs.   We must decide whether the court permissibly certified the dismissed claims under Federal Rule of Civil Procedure 54(b), so as to make the dismissal order final and immediately appealable.

I

The plaintiffs' complaint alleges the following.  CareFirst, Inc. and its subsidiaries provide health insurance to customers in the District of Columbia, Maryland, and Virginia.  In June 2014, hackers penetrated CareFirst's servers and stole or accessed customers' names, birthdates, e-mail addresses, subscriber numbers, and possibly social security and credit card numbers.  Seven customers from the District, Maryland, and Virginia sued CareFirst on behalf of all similarly situated insureds.  The customers collectively raised eleven state-law claims: five tort claims (negligence, negligence *per se*, fraud, constructive fraud, and breach of a duty of confidentiality); two contract claims (breach and unjust enrichment); and four statutory claims (D.C., Maryland, and Virginia consumer protection laws and the D.C. data breach notification statute). All told, the seven plaintiffs raised fifty-four claims stemming from the data breach.

CareFirst moved to dismiss for lack of standing and failure to state a claim. The district court dismissed the case on standing grounds, *Attias v. CareFirst, Inc.*, 199 F. Supp. 3d 193 (D.D.C. 2016), but we reversed, 865 F.3d 620 (D.C. Cir. 2017).

On remand, CareFirst renewed its motion to dismiss for failure to state a claim. The district court granted the motion in substantial part; it dismissed every claim made by five of the seven plaintiffs and all but two claims made by the two other plaintiffs, Curt and Connie Tringler of Maryland. *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1 (D.D.C. 2019). First, the court held that state law required actual damages for nine of the eleven claims (all but the unjust enrichment and D.C. consumer protection claims). *Id.* at 9–11. Because only the Tringlers alleged actual damages, the court dismissed the relevant nine claims of the other five plaintiffs. *Id.* at 17. The court also dismissed the unjust enrichment claims for failure to plead a necessary element. *Id.* at 25. Finally, it dismissed the tort claims and the D.C. consumer protection claims as duplicative of the breach-of-contract claims. *Id.* at 17–26. In sum, the court dismissed every claim except the Tringlers' claims for breach of contract and for violation of the Maryland consumer protection statute. *Id.* at 27.

The district court directed the parties "to advise the court of whether it should issue an order under Federal Rule of Civil Procedure 54(b) as opposed to certifying questions for interlocutory appeal under 28 U.S.C. § 1292(b)." J.A. 14. With no explanation, the parties agreed that Rule 54(b) was the better route for generating an appealable order. The plaintiffs also moved to stay the Tringlers' surviving claims during any appeal. They explained that this Court's "ultimate ruling will substantially impact the progress of those claims." Resp. to Feb. 14, 2019 Min. Order & Mot. for Stay of Remaining Claims, ECF No. 59, at 1.

In a brief order, the district court entered final judgment on all the dismissed claims under Rule 54(b). Tracking the Rule's language, the court expressly found "'no just reason for delay' of entry of final judgment." J.A. 158. But the court provided no reasoning for its conclusion, and it stayed the case pending resolution of this appeal.

In this Court, neither party questioned the validity of the Rule 54(b) certification, but we ordered the parties to address the issue at oral argument and in supplemental briefs.

II

Under Article III of the Constitution, the "judicial Power of the United States" is limited to resolving specified categories of "Cases" or "Controversies." U.S. Const. art. III, §§ 1 & 2. Moreover, as an "inferior" court created by statute, *id.* § 1, this Court "can have no jurisdiction but such as the statute confers," *Sheldon v. Sill*, 49 U.S. 441, 449 (1850). Before passing on the merits of any dispute, we must therefore determine whether we have both Article III and statutory jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–96 (1998). And we must raise those issues ourselves, even if no party has done so. *Id.* at 94.

For review of district-court decisions, our statutory jurisdiction comes primarily from 28 U.S.C. § 1291. That section gives the courts of appeals "jurisdiction of appeals from all final decisions of the district courts of the United States," except those directly appealable to the Supreme Court. A "final decision" under section 1291 ordinarily must resolve every claim of every party in a case. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 431–32 (1956).

Federal Rule of Civil Procedure 54(b) builds on that baseline principle. The adoption of the Federal Rules of Civil Procedure increased the opportunity for litigants to join multiple claims and parties in one lawsuit. *See Sears*, 351 U.S. at 432. To complement that change, Rule 54(b) offered the chance for earlier appellate review of some claims in a multi-claim or multi-party action. *See id.* at 433–34. The Rule "does not relax the finality required of each decision" by section 1291. *Id.* at 435. But it "provide[s] a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on all the claims in the case." *Id.*; *accord Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445, 453 (1956).

Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Rule establishes three requirements for an otherwise interlocutory order to be certified as a final judgment: (1) the

order must resolve a distinct "claim for relief"; (2) the order must be "final" with respect to that claim; and (3) the district court must permissibly determine that there is "no just reason for delay" in entering judgment. *See Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998).

The first two elements—whether the district court finally resolved one or more distinct claims for relief—plainly implicate our jurisdiction. An interlocutory order that does not resolve a distinct "claim for relief" is not a "decision" in the sense required by section 1291. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 41–42 (1995). And if a disposition is not "final" under Rule 54(b), then it likewise cannot qualify as a "final decision" under section 1291. *See Sears*, 351 U.S. at 437. Thus, if a district court certifies a matter that does not involve the "final" disposition of an entire "claim," we must raise the problem ourselves and must dismiss "for want of a final judgment." *Tolson v. United States*, 732 F.2d 998, 1001–03 (D.C. Cir. 1984).

The third element—whether the district court permissibly found that there is "no just reason for delay" of an appeal—has two components. First, the court must expressly determine that there is no just reason for delay. This is a "bright-line requirement" for establishing appellate jurisdiction on a Rule 54(b) certification. *Bldg. Indus. Ass'n*, 161 F.3d at 743. Second, we must decide whether the district court's determination was an abuse of discretion. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). To do that, we assess whether the district court reasonably considered the "judicial administrative interests as well as the equities involved," including the relationship between the certified and uncertified claims and the potential for multiple appeals on the same issues. *Id.* at 8; *see Bldg. Indus. Ass'n*, 161 F.3d at 744–45. If the district court failed to explain why it found "no just

reason for delay," we must "do the best we can" to discern its reasoning. *See Bldg. Indus. Ass'n*, 161 F.3d at 745. And we must dismiss the appeal if we conclude that the district court unreasonably weighed the relevant equities, *Brooks v. Dist. Hosp. Partners*, 606 F.3d 800, 806 (D.C. Cir. 2006), or if we cannot discern whether it reasonably did so, *Bldg. Indus. Ass'n*, 161 F.3d at 745.

The permissibility of a Rule 54(b) certification depends in significant part on the relationship between the certified claims finally resolved by the district court and the uncertified claims that remain pending before it. In *Tolson*, we addressed when different claims are distinct enough to justify the entry of final judgment on only some of them. We established this "rule of thumb" on that question: "When alleged claims are so closely related that they would fall afoul of the rule against splitting claims if brought separately, they do not qualify as 'separate' claims within the meaning of Rule 54(b)." 732 F.2d at 1001 (cleaned up). We then applied that principle to dismiss an appeal from an order resolving one of three transactionally related negligence claims. *See id.* at 1002–03.

III

Under this framework, we lack appellate jurisdiction over the certified claims of the Tringlers and of the other plaintiffs.

Start with the Tringlers' claims. The Tringlers raise contract, tort, and statutory claims arising out of the same event—the June 2014 cyberattack on CareFirst. Their pending breach of contract and Maryland consumer protection claims arise from the same transaction and occurrence as their dismissed tort and unjust enrichment claims. Under basic principles of claim preclusion, the Tringlers could not have litigated to judgment one action involving the claims still pending before the district court and another involving the

claims already dismissed. *See*, *e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Smith v. Jenkins*, 562 A.2d 610, 613 (D.C. 1989); Restatement (Second) of Judgments § 24 (Am. Law Inst., 1982). So under *Tolson*, they likewise cannot sever the latter claims for an immediate appeal under Rule 54(b). *See* 732 F.2d at 1002.

That leaves us with the other plaintiffs' claims. *Tolson* does not resolve whether the district court could have certified their claims despite the pendency of certain claims by the Tringlers. For purposes of claim preclusion, different plaintiffs may litigate parallel claims in different lawsuits. *See*, *e.g.*, *Smith*, 562 A.2d at 613; 18 C. Wright & A. Miller, *Federal Practice & Procedure* § 4406 (3d ed. 2017). Nonetheless, any such certification would raise concerns, for the claims of any one plaintiff in this case overlap substantially with the claims of every other plaintiff. The claims of each plaintiff arise from the same computer hacking and data breach. They involve the same form contracts used by CareFirst. They involve the same alleged misrepresentations made by the company on the internet and in its promises to comply with federal privacy law. And, given the parties' decision to litigate the common-law claims under D.C. law, they involve almost entirely the same governing law. All of this explains why the plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3), which requires "common" questions to predominate over "individual" ones. It also explains why the plaintiffs moved to stay the claims pending in the district court on the ground that our disposition of the appeal would "substantially impact the progress of those claims." ECF No. 59, at 1. This suggests that a Rule 54(b) certification would generate "piecemeal appeals" in a case that "should be reviewed only as [a] single unit[]." *Curtiss-Wright Corp.*, 446 U.S. at 10.

In any event, we need not decide whether the district court could have certified the non-Tringler claims alone, because we lack jurisdiction over them for a separate reason: It is unclear whether the district court would have certified these claims for immediate appeal had it properly declined to certify the claims of the Tringlers. The district certified a very different subset of claims—all claims minus the two pending Tringler claims— and it failed to explain its reasons for doing so. We are thus left much as we were in *Building Industry Association*: We confront certified claims that appear highly "intertwined" with claims still pending below (and with other dismissed claims that cannot be certified). 161 F.3d at 745. And we have no "assistance" in the form of an explanation from the district court. *See id.* As a result, we cannot determine whether the district court would have certified only the non-Tringler claims, much less whether it could have come up with a permissible justification for doing so. As in *Building Industry Association*, we must therefore dismiss the appeal for lack of jurisdiction.

*So ordered.*