# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 18, 2020    Decided October 16, 2020

No. 19-3040

UNITED STATES OF AMERICA,
APPELLEE

v.

FLOYD CLARK,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00133-1)

*Steven R. Kiersh*, appointed by the court, argued the cause and filed the brief for appellant.

*Daniel G. Randolph*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman*, *John P. Mannarino*, and *James Sweeney*, Assistant U.S. Attorneys. *Suzanne G. Curt*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and WALKER, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*:  In this habeas case, both Parties contend that we have appellate jurisdiction—albeit for different reasons.  But we think neither Party's arguments are persuasive, so we dismiss the appeal for lack of subject-matter jurisdiction.

**I.**

We begin with a brief review of the underlying facts:  On May 6, 2009, two men abducted Michael Walker at gunpoint in Washington, D.C.  They robbed Walker, beat him with their weapon, threatened his family, and demanded $150,000.  After leading his kidnappers to a Maryland storage facility where he claimed to keep his money, a bloodied Walker escaped and called the police.

At first, Walker claimed not to know his assailants; but later, he identified Petitioner Floyd Clark as one of the two men.  For over a year prior to the attack, Clark had introduced Walker to street-level narcotics dealers in exchange for a cut of the drug proceeds.  According to Walker, he initially refrained from naming Clark because he planned to have Clark killed.  But Walker ultimately decided that killing Clark wasn't "worth it," and he turned Clark's name over to a D.C. Metro Police detective.  J.A. 503.  The second abductor was never identified.

On May 15, 2009, a grand jury returned a nine-count indictment against the Petitioner, charging him with kidnapping, 18 U.S.C. § 1201(a)(1), armed carjacking, D.C. Code §§ 22-2803, -4502, brandishing a firearm in a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), and various related offenses.  The following year, Clark was convicted on all counts in federal court[1]—a verdict based principally on

---

[1] Although the jury convicted Clark of two counts under § 924(c), the district court subsequently granted the government's motion to vacate one of those convictions.  On direct appeal, we

Walker's testimony.  The district judge sentenced Clark to 260 months imprisonment, including a mandatory 60 months pursuant to § 924(c)(1).

Four years later, Walker recanted.  In a signed affidavit, Walker claimed that he actually did not know who carjacked, kidnapped, and robbed him; and that he only accused Clark because he thought Clark was having an affair with his wife.  He also claimed that the police induced him to make up "a story" so that they could "make a case" against Clark.  J.A. 1006–07.

In April 2015, Clark moved *pro se* for habeas relief under 28 U.S.C. § 2255, which authorizes a post-conviction action to set aside a federal sentence imposed in violation of the Constitution or laws of the United States.  Clark's *pro se* habeas application rested on three grounds:  (1) Walker's recantation, (2) Ineffective assistance of trial counsel, and (3) Ineffective assistance of appellate counsel.  The district court *sua sponte* appointed counsel for Clark.  *See* 18 U.S.C. § 3006A.  Then with the assistance of counsel, Clark supplemented his initial § 2255 motion, claiming that 18 U.S.C. § 924 (c)(1)(A)—which carries a five-year mandatory minimum for brandishing a firearm in any crime of violence—is unconstitutionally vague after the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015).  *See also United States v. Davis*, 139 S. Ct. 2319, 2324 (2019).   Counsel also grounded Clark's recantation claim in the Fifth Amendment's due process clause.

On April 22, 2019, the district court denied Clark's first three claims, but—here is the rub—it reserved the Petitioner's § 924(c) claim for later resolution because, at that time, *Davis*

---

affirmed Clark's convictions, but we vacated his initial (84-month) § 924(c) sentence and remanded for resentencing. *See United States v. Clark*, 565 F. App'x 4, 5 (D.C. Cir. 2014) (unpublished) (discussing *Alleyne v. United States*, 570 U.S. 99, 103 (2013)).

had not been decided. The judge explained that his opinion "resolves three of Mr. Clark's claims but leaves the [§ 2255] motion open until the Court is able to resolve his fourth claim." J.A. 1270.

For a petitioner to appeal the final order in a § 2255 habeas case, § 2253(c)(1) requires him to obtain a certificate of appealability. Accordingly, the week after the district court issued its order, Clark moved for the certificate. The district judge granted the certificate *solely* on Clark's recantation claim without commenting on the finality of the underlying order— which, of course, left one claim pending.

## II.

This case raises an obvious question about our appellate jurisdiction. Can the district judge's order, partially resolving Clark's petition, be considered "final" under § 2253(a)? Petitioner says yes, asserting a right to appeal from a "practically" final order. The government agrees that we have jurisdiction, but reaches that position by urging us to construe Petitioner's habeas motion—despite its specific designation— as a Federal Rule of Criminal Procedure 33 motion for a new trial. A Rule 33 motion, the government asserts, is a separate and independent procedural vehicle from any § 2255 claims, which are civil in character. Then, on the government's theory, the rejection of a Rule 33 motion is its own final order without regard to Clark's pending § 924(c) claim. That leads to the government's kicker—because Rule 33 motions must be brought within three years of a verdict, we should reject Petitioner's "Rule 33" motion as time barred.

Questions of finality typically arise under 28 U.S.C. § 1291, a general statutory grant of appellate jurisdiction. That section provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all *final* decisions of the district courts." (emphasis added). Although § 2253 controls our jurisdiction in habeas cases, *see Gonzalez v. Thaler*, 565 U.S.

134, 140 (2012), it also limits our authority to reviewing only final orders. And the requirement of finality in habeas cases is "no less exacting" than in other contexts. *Andrews v. United States*, 373 U.S. 334, 340 (1963). Of course, as a jurisdictional prerequisite, we are obliged to consider finality in habeas appeals even if not raised by either party.

Because it leaves Clark's § 924(c) claim pending, the district court's order appears nonfinal on its face. A judgment is typically final only when the whole case is complete. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020). We consider an order "final" if it "terminates" the case and leaves nothing for the court "but [to] execute the judgment." *Id*. This final-judgment rule—derived from the common law and codified since the First Congress—has long promoted efficient judicial administration by avoiding the delay and expense of piecemeal appeals. *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009); *McLish v. Roff*, 141 U.S. 661, 665–66 (1891).

Notwithstanding this well-established doctrine, Petitioner relies on an old Supreme Court case, *Gillespie v. United States Steel Corp.*, 379 U.S. 148 (1964), which, he claims, "opens the door a little bit" and allows ostensibly nonfinal orders to be regarded as "practically" final. To be sure, *Gillespie* is a rather confusing case. There, the Supreme Court confronted an important national question: Whether the Jones Act, a federal maritime law governing liability for a seaman's injury or death, preempted state and common law remedies. *Id.* at 150. The district court, ruling that the Jones Act supplied the exclusive remedy for those cases falling within its purview, struck all parts of the complaint that related to recovery on other theories. *Id*. at 150–51. But it left the merits of the plaintiff's Jones Act claim for further litigation. *Id*. The Supreme Court characterized the finality issues as "obviously marginal" (for reasons not particularly apparent). *Id*. at 154. And it noted that in "marginal cases," courts should weigh the inconvenience of piecemeal review as well as the dangers of

delay. *Id*. at 152–53. The Court then plowed ahead to decide the merits.

Petitioner relies on the Supreme Court's comment in *Gillespie* where the court called for a "practical rather than technical" construction of finality, *id*. at 152, language that we have described as dictum, *Everett v. US Airways Grp., Inc.*, 132 F.3d 770, 774 (D.C. Cir. 1998). But, nearly 15 years later, the Court closed the door on Petitioner's expansive reading of *Gillespie*. In *Coopers & Lybrand v. Livesay*, the Court "explained" *Gillespie* was based, in part, on the Parties' failure to raise the finality issue until argument on the merits and the "unsettled issue of national significance" presented by the case. 437 U.S. 463, 477 n.30 (1978).[2] To use a labor-relations term, the court "red circled" *Gillespie*, limiting that case to its unique facts. *See id*. In *Everett*, we followed the Supreme Court's admonition and rejected a *Gillespie* exception to the final-judgment rule. 132 F.3d at 774.[3]

---

[2] Occasionally the Supreme Court gives procedural objections—and sometimes even jurisdictional questions—short shrift when it regards the merits as compelling. *See, e.g.*, *Buck v. Davis*, 137 S. Ct. 759, 774–75 (2017) (proceeding to the merits of a petitioner's habeas claims where only a certificate of appealability was at issue); Carrie Leonetti, *Smoking Guns: The Supreme Court's Willingness to Lower Procedural Barriers to Merits Review in Cases Involving Egregious Racial Bias in the Criminal Justice System*, 101 MARQ. L. REV. 205, 216–30 (2017).

[3] We recognize, of course, that the collateral order doctrine is a practical construction of the finality requirement. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). That limited doctrine accommodates a small class of rulings that conclusively determine a disputed question, resolve an issue completely separate from the merits of the action, and are effectively unreviewable on appeal from a traditional final judgment. Clark makes no attempt to justify this appeal based on the collateral order doctrine. Nor could

Even if we were to read *Gillespie* as providing some "flexibility" in the application of finality, Petitioner's claims, while creative, are fallacious. Petitioner asks us to give significance to the fact that his pending § 924(c) claim was a late addition to his initial, *pro se*, § 2255 motion. He would have us treat his dismissed claims as totally separate from his § 924(c) claim simply because the latter supplemented his petition. But this distinction does not differentiate Clark's appeal from any other nonfinal order in which a district court has dismissed one potentially dispositive claim or granted partial summary judgment. *See, e.g.*, *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742 (1976).

Finality does not depend on *when* one's claims are filed—it depends on *whether* the entire case has been decided. Indeed, in the general civil context, the final-judgment rule is not satisfied if "the plaintiff is free to amend his pleading and continue the litigation"—even where his complaint has already been dismissed by the district court. *Ciralsky v. C.I.A.*, 355 F.3d 661, 666 (D.C. Cir. 2004); *see Murray v. Gilmore*, 406 F.3d 708, 712–13 (D.C. Cir. 2005). So too in habeas proceedings. If a decision is not final so long as a plaintiff may file additional claims (or amend existing ones), then, *a fortiori*, the district court's failure to decide supplemental claims *already* filed cannot make final an otherwise interlocutory order. It should also be recognized that endorsing Clark's argument would defeat the policy against piecemeal appeals.

---

he, as the denial of his recantation claim will be reviewable upon the final disposition of his entire habeas application. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 532 F.3d 860, 864 (D.C. Cir. 2008).

Clark also asserts that an unpublished opinion of ours, *Earle v. Sec. & Exch. Comm'n*, No. 20-5013, 2020 WL 4332907, (D.C. Cir. May 1, 2020), "reiterated the vitality of *Gillespie*." Suffice it to say, it did not.

On his theory, whenever a habeas petitioner files his claims in succession, he may subsequently appeal the denial of those claims bit by bit rather than at the end of the litigation. But that would encourage manipulative filings and "vitiate the final judgment rule altogether." *Green v. Dep't of Commerce*, 618 F.2d 836, 841 (D.C. Cir. 1980).

Petitioner's last argument is quite thin. He claims that the district court's certificate of appealability suffices to establish finality. That contention flies in the face of § 2253, which requires *both* a final order *and* a certificate of appealability. *See* § 2253(a), (c)(1).[4] We acknowledge that Federal Rule of Civil Procedure 54(b) permits a district court to enter a final judgment as to one or more (but fewer than all) claims when there "is no just reason for delay"—a determination that we would review for an abuse of discretion. *See Attias v. CareFirst, Inc.*, 969 F.3d 412, 417 (D.C. Cir. 2020). But "without the express determination and direction required by Rule 54(b), the [district court's] judgment cannot be considered final 'as to any of the claims.'" *Everett*, 132 F.3d at 773. Here, the district court did not make the required determination. And we cannot say whether the relevant equities would have permitted the court to do so. Thus, Rule 54(b) does not facilitate jurisdiction here.

We turn to the government's position. The government sought to interpret Clark's petition, a civil motion, as a *de facto* continuation of a criminal proceeding under Rule 33. If so, Clark's "Rule 33 motion for a new trial" would be too late, as it was filed beyond that rule's three-year limitations period. *See* Fed. R. Crim. P. 33(b)(1).

---

[4] One is reminded of Frank Sinatra's song: As with "love and marriage," the requirements of § 2253 "go together like a horse and carriage. . . . You can't have one without the other." Frank Sinatra, *Love & Marriage* (Capitol Studios 1955).

This is really an extraordinary argument. The courts of appeals have generally adhered to the maxim that "substance trumps form" in habeas proceedings. *Trenkler v. United States*, 536 F.3d 85, 97 (1st Cir. 2008). And so, no matter what label a Petitioner gives to an action, "'any motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255 [], *is* a motion under § 2255.'" *Id.* (quoting *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004)) (emphasis in original). There is no question that Clark meets those requirements here.[5]

On occasion, we note that courts will treat a *pro se* litigant's tardy motion for a new trial as a § 2255 petition, thus giving him the benefit of the doubt. *See generally United States v. Palmer*, 296 F.3d 1135, 1143 (D.C. Cir. 2002), *as amended* (Sept. 17, 2002). Yet the government's position would flip this practice on its head—asking us to construe a perfectly clear § 2255 motion as a Rule 33 motion for the very purpose of dismissing Petitioner's claim as time barred. We reject that rather peculiar position summarily.

Accordingly, the appeal is dismissed.

*So ordered.*

---

[5] In fact, the government concedes that the Supreme Court has not squarely precluded a "due process" habeas claim based on newly discovered evidence probative of actual innocence—notwithstanding the extraordinary showing any such claim may require. Appellee Br. 21–22 n.4; *see Herrera v. Collins*, 506 U.S. 390, 416–17 (1993).