# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 5, 2025        Decided March 10, 2026

No. 24-5172

MONTE A. ROSE, JR., ET AL.,
APPELLEES

v.

ROBERT F. KENNEDY, JR., SECRETARY, UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES, IN HIS
OFFICIAL CAPACITY, ET AL.,
APPELLEES

INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02848)

———

*James A. Barta*, Solicitor General, Office of the Attorney General for the State of Indiana, argued the cause for appellant. With him on the briefs were *Theodore E. Rokita*, Attorney General, *Jenna M. Lorence*, Deputy Solicitor General, at the time the brief was filed, and *Caroline M. Brown*.

*Maxwell A. Baldi*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With him on the brief

were *Brett A. Shumate*, Assistant Attorney General, *Michael S. Raab*, Attorney, and *David L. Hoskins*, Deputy Associate General Counsel for Litigation, U.S. Department of Health and Human Services. *Steven H. Hazel*, Attorney, entered an appearance.

*Erica S. Turret* argued the cause for plaintiffs-appellees. With her on the brief were *Ian H. Gershengorn*, *Martha Jane Perkins*, and *Catherine A. McKee*.

*Phillip A. Escoriaza* and *Madelaine M. Cleghorn* were on the brief for amici curiae American Public Health Association and 67 Deans, Chairs and Scholars.

Before: MILLETT, PAN and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

PAN, *Circuit Judge*: Indiana appeals a district court order remanding this case to the Department of Health and Human Services (HHS) for further proceedings. Because the remand order at issue is not a "final decision[]" of the district court, 28 U.S.C. § 1291, and no exception to the finality rule is applicable here, we conclude that we lack jurisdiction.

The underlying dispute concerns whether Indiana's Medicaid program complies with the federal Medicaid Act. Medicaid beneficiaries in Indiana sued HHS, claiming that the agency illegally approved a ten-year extension of the Indiana program. Indiana intervened to defend the program. The district court granted summary judgment in favor of the beneficiaries, vacated HHS's approval decision, and remanded the matter to HHS. But the district court stayed its vacatur order, and Indiana's Medicaid program therefore remains largely in effect pending the outcome of HHS's remand

proceedings. Under the circumstances, the order is not final and we discern no basis to exercise appellate jurisdiction: HHS will reconsider the request to extend Indiana's Medicaid program on remand; Indiana's right to appeal the remand order is protected because it can challenge the remand order in conjunction with an appeal of the remand proceedings once they are completed; and in the meantime, the district court's stay order ensures that Indiana's Medicaid program remains essentially undisturbed. We therefore dismiss Indiana's appeal.

## I.

Medicaid is a federal program that subsidizes the states' provision of medical services to low-income persons. 42 U.S.C. § 1396-1. Each state implements its own Medicaid program, and the Medicaid Act establishes certain minimum coverage requirements that the states must include in their Medicaid healthcare plans. *See id.* § 1396a(a). States must comply with the Act's requirements if they wish to receive federal funding for their programs. *See id.* (listing requirements). HHS is the federal agency that ensures that state Medicaid programs comply with the requirements of the Medicaid Act. *See id.* § 1396-1.

After passage of the Affordable Care Act, Indiana expanded its Medicaid program to cover certain low-income adults who previously did not qualify for Medicaid. Indiana's new program, dubbed the Healthy Indiana Plan 2.0 (HIP 2.0), replaced a prior version of the state-sponsored plan. HIP 2.0 offers two tiers of benefits: (1) HIP Plus requires no co-payments for most medical services and covers vision and dental services, while (2) HIP Basic generally requires co-payments and does not include vision and dental coverage. Enrollees in HIP Plus pay monthly premiums into Personal

Wellness and Responsibility (POWER) accounts, which are designed to operate like health-savings accounts. Qualified individuals who have incomes over the poverty level are only eligible for HIP Plus. Enrollees who fail to pay those premiums are defaulted to HIP Basic or stripped of their coverage, depending on their income levels.

HHS first approved HIP 2.0 in January 2015, and since then, HHS has approved several extensions. In October 2020, HHS approved Indiana's application to extend HIP 2.0 for ten years.[1]

In 2023, HHS sent Indiana a letter announcing that it had "concerns" about certain features of HIP 2.0 that appeared to reduce coverage for populations that Medicaid is intended to serve. J.A. 685. The agency nonetheless stated that it would not be "taking any action now" on HIP 2.0 because, "given the totality of the circumstances," it had "concluded that withdrawing [its approval of HIP 2.0] at [that] time [would be] too disruptive . . . ." *Id.*

Three Indiana Medicaid beneficiaries filed suit in the district court against HHS, the Centers for Medicare & Medicaid Services, and the heads of those agencies to invalidate (1) HHS's 2020 approval of the ten-year extension of HIP 2.0, and (2) the agency's 2023 letter decision that left HIP 2.0 in place despite specified "concerns." The beneficiaries argued that both actions were unlawful under the Administrative Procedure Act, essentially because HIP 2.0 threatens coverage and therefore is contrary to the central

---

[1] HHS also approved a five-year extension of Indiana's "Substance Use Disorder" program. The parties debate whether that program was a part of HIP 2.0 or a separate Medicaid demonstration program. That dispute has no bearing on the jurisdictional question we decide here.

purpose of the Medicaid Act. Indiana intervened to defend the legality of HIP 2.0.

On cross-motions for summary judgment, the district court held that the Secretary's 2020 approval of HIP 2.0's extension did not reflect reasoned decision-making and was not based on consideration of all relevant factors. *Rose v. Becerra*, No. 19-cv-2848, 2024 WL 3202342, at \*1–2 (D.D.C. June 27, 2024). In particular, the district court held that the Secretary did not adequately consider whether the program "would in fact help the state furnish medical assistance to its citizens," the central objective of the Medicaid Act. *Id.* (citation omitted). The district court granted summary judgment to the plaintiff-beneficiaries, vacated the 2020 approval, and remanded the matter to HHS for further proceedings. *Id.* at \*29. Because the "vacatur [of the 2020 approval] afford[ed] Plaintiffs full relief," the district court reasoned that there was no need for it to determine whether the agency's 2023 letter decision was also arbitrary and capricious. *Id.* at \*2.

Indiana sought clarification from the district court about the legal effect of its order. Indiana maintained that it was unclear whether the order was a "judgment" and whether it had disposed of all plaintiffs' claims. Indiana thus asked the district court either to state that it had finally resolved all the claims or to issue a separate judgment on the claim that it had resolved. In response, the district court confirmed that it had entered a judgment resolving the first count of the complaint, and found, under Federal Rule of Civil Procedure 54(b), "that there is no just reason for delay of appellate review of [the remand order] and its accompanying Memorandum Opinion." J.A. 539.

The parties, including Indiana, jointly sought a partial stay of the district court's order vacating the extension of HIP 2.0 and remanding for further proceedings. The parties requested

that the district court allow the Secretary's approval of HIP 2.0 to remain in effect until the resolution of any appeal, "except for those portions related to payment or non-payment of POWER account contributions." J.A. 575. The district court granted the parties' joint request. HIP 2.0 therefore remains operative, except that Indiana now lacks authority to collect premiums related to the POWER accounts or to terminate HIP Plus coverage based on non-payment of POWER premiums. The district court later clarified that its order vacating HIP 2.0 would remain stayed to that extent during the remand proceedings before HHS.

Indiana filed the instant appeal. In response, the beneficiaries filed a motion to dismiss, arguing that we lack appellate jurisdiction. They contend that 28 U.S.C. § 1291 reserves appellate jurisdiction for appeals of "final decisions" of the district court, and that the district court's order vacating HHS's approval of HIP 2.0 and remanding the matter to HHS for reconsideration was not "final" for purposes of that rule. Mot. to Dismiss 4–9. The beneficiaries point out that the district court's order did not "finally resolve" the matter because HHS will conduct further proceedings on remand. *Id.* at 2; *accord* Appellees Br. 16. HHS agrees with the beneficiaries. It declined to file its own appeal and joins the beneficiaries in arguing that we should dismiss Indiana's appeal.

## II.

### A.

We resolve this appeal by applying the general rule that "appellate review should be postponed . . . until after final judgment has been rendered by the trial court." *Will v. United States*, 389 U.S. 90, 96 (1967); *see also* 28 U.S.C. § 1291. Here, the district court's remand order falls in the heartland of

non-final judgments, and we therefore lack jurisdiction to review it.

The final-judgment rule embodies the principle that "only final judgments and decrees of the federal district courts may be reviewed on appeal." *Cunningham v. Hamilton County*, 527 U.S. 198, 203 (1999) (cleaned up). It is a "historic characteristic of federal appellate procedure" that traces its roots to the first Judiciary Act of 1789. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 116 (2009) (Thomas, J., concurring) (citation omitted). Today, it is codified at 28 U.S.C. § 1291, which states that "[t]he courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States." Courts "have repeatedly interpreted § 1291 to mean that an appeal ordinarily will not lie until after final judgment has been entered in a case." *Cunningham*, 527 U.S. at 203 (collecting cases).

The final-judgment rule "serves the important purpose of promoting efficient judicial administration." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). It guards against piecemeal litigation and the attendant "obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals." *Id.* (citation omitted); *see also Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976) ("[P]articularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation."); *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430 (1985) ("In § 1291 Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by piecemeal appellate review of trial court decisions which do not terminate the litigation."

(cleaned up)). And it restrains courts of appeals from prematurely weighing in on proceedings before the district judge, who must exercise judicial "independence" to "decide the many questions of law and fact that occur in the course" of litigation. *Firestone Tire*, 449 U.S. at 374.

A ruling is "final" if it "terminate[s] an action," *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015), meaning it "completely ends the litigation on the merits," *LeFande v. District of Columbia*, 841 F.3d 485, 492 (D.C. Cir. 2016). "Conversely, if an order does not terminate an action, but instead leaves the core dispute unresolved for further proceedings, it is not final for purposes of Section 1291." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 385 (D.C. Cir. 2017) (cleaned up).

Although assessing "finality" is sometimes a close question, that generally is not the case when considering a remand order to a federal agency. Instead, "it is black letter law that a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291." *Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d 653, 656 (D.C. Cir. 2013) (cleaned up). Remand orders typically are considered interlocutory because they leave the agency with more work to do. The agency is expected to conduct further proceedings to resolve issues within the scope of the remand. If a party is dissatisfied with the agency's decision on remand, it may seek review in the district court and then in the court of appeals to challenge both the remanded proceedings and "the remand order requiring them." *Id.* at 657; *see also Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) ("[A] party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of . . . error at any stage of the litigation may be ventilated . . . ."). Thus, delaying appellate review until there is a final judgment after remand

"promotes judicial economy and efficiency by avoiding the inconvenience and cost of two appeals: one from the remand order and one from a later district court decision reviewing the proceedings on remand." *Sierra Club*, 716 F.3d at 656. "Such a deferral also leaves open the possibility that no appeal will be taken [at all], in the event that proceedings on remand are satisfactory to all parties." *In re St. Charles Pres. Invs., Ltd.*, 916 F.2d 727, 729 (D.C. Cir. 1990) (per curiam).

Here, Indiana seeks to appeal a typical remand order that sends this case back to HHS for reconsideration of whether HIP 2.0 should be extended. All the reasons that justify the final-judgment rule are manifest. The imminent remand proceedings before HHS presumably will result in a new agency action that will be reviewable by the district court and appealable to this court, and Indiana will have the option of appealing the instant remand order in conjunction with such a later appeal. There is no need to entertain an appeal now and then another one after the remand proceedings are completed. Moreover, HHS might again approve the extension of HIP 2.0, under terms that are satisfactory to Indiana, obviating the need for any appeal by Indiana at all. On top of that, there is little prejudice to Indiana during the pendency of the remand proceedings because the district court has stayed its order vacating HIP 2.0 along the very lines Indiana proposed, so the program essentially remains in effect while litigation continues. Under the circumstances, there is no apparent basis to deviate from the normal final-judgment rule.

Although we have recognized some exceptions to the general principle that remand orders are not "final," none of those exceptions apply here. First, for over fifty years, we have recognized that "orders [remanding] causes to the appropriate administrative or executive agency" may be "final and appealable" by the agency itself — in this case, HHS. *Gueory*

*v. Hampton*, 510 F.2d 1222, 1225 (D.C. Cir. 1974). That exception recognizes that the agency, if denied immediate access to appellate review, must conduct the remand proceedings and render a new ruling, and it "cannot later challenge its own actions complying with a remand order." *Sierra Club*, 716 F.3d at 656–57. Under such circumstances, "[u]nless another party appeals [the agency's new ruling], the correctness of the district court's [remand order] will never be reviewed by the court of appeals, notwithstanding the agency's conviction that the [remand order] is erroneous." *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 330 (D.C. Cir. 1989). In such a case, "the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *Id.* (quoting *Bender v. Clark*, 744 F.2d 1424, 1427 (10th Cir. 1984)); *see also N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 19–20 (D.C. Cir. 2008) (recognizing that an agency may "appeal immediately rather than bear significant expenses that cannot be recovered or take action pursuant to the remand that cannot be reversed if it is later determined that the order was improper"). That rationale is inapplicable here, where HHS declined to appeal the district court's remand order, and only Indiana, an intervenor, seeks appellate review at this juncture.

We also have held that a remand order may be considered "final" if it conclusively determines the disputed question, and all that remains are "ministerial" proceedings before the agency, *Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 881 (D.C. Cir. 2000); *accord St. Charles Pres. Invs.*, 916 F.2d at 729; or, relatedly, if the agency will abstain from addressing the merits of the plaintiff's claims on remand, *see Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 515 (D.C. Cir. 2020). Those exceptions are inapplicable here because the contemplated remand proceedings before HHS will be substantive and not "ministerial": The district court has ordered HHS to reconsider

its decision to extend HIP 2.0 and to ensure that the program complies with the Medicaid Act, noting that "it is . . . fair to say that the road to curing the deficiency [in HIP 2.0] is, at best, a rocky one." *Rose*, 2024 WL 3202342, at *27 (cleaned up); Gov't Br. 22 ("On remand, HHS will reevaluate Indiana's various requests for waivers from statutory Medicaid requirements."). *Cf. Limnia, Inc.*, 857 F.3d at 386 (holding that when an agency "was not offering to reconsider" the challenged agency decision, a remand order is practically final). The agency has much work to do, and the proceedings before it obviously will not be ministerial or non-substantive. Indeed, the nature and scope of the remand underscore why the district court's order was not final.

In sum, Indiana seeks to appeal a textbook remand order that is prototypically non-final. We lack jurisdiction to entertain its claims under 28 U.S.C. § 1291.

**B.**

Indiana argues that the district court's vacatur-and-remand order is immediately appealable for three reasons. First, it contends that practical considerations render the remand order "final." Second, it invokes elements of the Supreme Court's collateral-order doctrine, which allows for the immediate appeal of non-final issues that are important and separate from the merits. And third, it argues that the "district court's certification of its order under Rule 54(b) for immediate appeal should remove any doubts as to the order's finality." Reply Br. 32. We disagree on all three fronts.

**1.**

Indiana argues that the remand order was "final" in a practical sense because "the costs of delaying [appellate] review are high for Indiana and its citizens." Ind. Br. 66. That

argument misses the mark because the costs of delayed appellate review generally do not suffice to justify an immediate appeal of a non-final order. Moreover, Indiana's claim of "high" costs is suspect because it rests only on Indiana's protestation that the district court's "partial stay" does not allow Indiana to continue to enforce its POWER premium requirements. *See* Reply Br. 30.

As an initial matter, the vacatur of the POWER premium provisions is at least in part a problem of Indiana's own making. The district court's partial stay was the product of the parties' *joint* request, in which Indiana, HHS, and the plaintiff-beneficiaries agreed that the district court should stay "its opinion and order vacating the Healthy Indiana Plan (HIP) 2.0 Demonstration Project pending appeal, *except for those portions related to payment or non-payment of POWER account contributions*." J.A. 575 (emphasis added). Indiana thus consented to the scope of the stay that is in effect and allowed the POWER-account provisions to be vacated immediately.[2]

---

[2] Indiana argues — for the first time in its reply brief — that because it filed its notice of appeal before the district court entered its partial stay order, the partial stay should be "legally irrelevant" to our finality analysis. Reply Br. 30–31. But we are not constrained to ignore that relevant fact. Courts have "long given § 1291 a practical rather than a technical construction." *Mohawk Indus.*, 558 U.S. at 106 (cleaned up); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962) ("A pragmatic approach to the question of finality has been considered essential to the achievement of the just, speedy, and inexpensive determination of every action: the touchstones of federal procedure." (cleaned up)). We must consider the full picture in evaluating the "inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152–53 (1964) (citation omitted); *see also In re Long-Distance*

In any event, Indiana cites no authority or precedent to buttress its suggestion that a non-final order may be deemed appealable merely because the "costs of delaying review" are "high." The "finality requirement necessarily delays the resolution of important legal questions," and "Congress has determined that such delay must be tolerated in order to avoid the debilitating effect on judicial administration that would otherwise result from piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012) (cleaned up); *see also Digit. Equip.*, 511 U.S. at 872 ("[T]he strong bias of § 1291 against piecemeal appeals almost never operates without some cost."). Delayed appellate review will often cause one party to incur some expense, and Indiana does not explain why we should treat this case differently from all the others.

Moreover, even if we assume that the cost of delay is relevant, the interim vacatur of HIP 2.0's POWER-account provisions does not appear to be unduly costly to Indiana or its citizens. In fact, the record reflects that the court's order will not change the status quo: Indiana's POWER premium requirements have not been in effect since early 2020, when they were suspended due to the COVID-19 pandemic. *See Rose*, 2024 WL 3202342, at *6–7. We therefore find Indiana's cost-based arguments wholly unpersuasive.

---

*Telephone Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 633 (D.C. Cir. 2014) (noting that it was "particularly important" to the question of finality "that at oral argument[,]" well after the notice of appeal, "government counsel conceded that the [agency] is 'not planning' to engage in future rulemaking on the subject"). Because the district court's partial-stay order bears upon the justness of delay, we may appropriately consider it in our "pragmatic" analysis.

Indiana also errs in citing as a "cost" its perceived loss of any opportunity to challenge the district court's reasons for vacating the 2020 extension of HIP 2.0. *See* Reply Br. 29 (contending that "the costs of delaying [appellate] review are high" because after the remand proceedings are concluded, "Indiana's opportunity to defend the 2020 approval will have been lost"). To the contrary, an intervenor (like Indiana) that is "dissatisfied with the action on remand may still challenge the remanded proceedings — as well as the remand order requiring them — after the proceedings are complete." *Sierra Club*, 716 F.3d at 657; *see also NAACP v. U.S. Sugar Corp.*, 84 F.3d 1432, 1436 (D.C. Cir. 1996). Moreover, as discussed, it is unclear at this time whether Indiana will wish to file an appeal after the conclusion of the remand proceedings — it is possible that the "proceedings on remand [will be] satisfactory to" Indiana, rendering Indiana's objections to the remand order moot. *St. Charles Pres. Invs.*, 916 F.2d at 729.

Finally, Indiana argues that we ought to give it "special solicitude" to appeal a non-final order because it is a sovereign partner in the federal-state Medicaid program. Reply Br. 31–32 (quoting *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007)). It advocates for a finality rule that is flexible enough to allow it to "safeguard[] its sovereign interests and the interests of its citizens." *Id.* at 32. We need not decide whether other circumstances might allow a state to immediately appeal a remand order that vacates a crucial provision in a cooperative federal-state agreement. *See Mohawk Indus.*, 558 U.S. at 106 ("[Courts have] long given § 1291 a practical rather than a technical construction." (cleaned up)). For example, the vacatur of a state's entire Medicaid program during the pendency of on-going remand proceedings might arguably have practical effects that resemble "finality" and therefore allow appellate jurisdiction. But that is not the case here, where

the vacatur of Indiana's Medicaid plan has been largely stayed and the scope of the stay order was requested by Indiana.

**2.**

Indiana also gestures at the collateral-order doctrine to support its argument for immediate appellate review. Pursuant to that doctrine, the Supreme Court has held that appealable "final" judgments encompass "not only judgments that 'terminate an action,' but also a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Mohawk Indus.*, 558 U.S. at 106 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949)). Such claims are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S at 546.

Under the collateral-order doctrine, a district-court order qualifies for immediate appeal if it: "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (cleaned up). When those factors are met, the "justification for immediate appeal" is "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus.*, 558 U.S. at 107. At bottom, "the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Id.* (cleaned up). Notably, the Supreme Court has cautioned that we must avoid an expansive understanding of the collateral-order doctrine, as the doctrine "must never be allowed to swallow the general rule

that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Id.* at 106 (cleaned up).

The facts before us do not support application of the collateral-order doctrine. First, the district court's remand order did not "conclusively determine" anything. *Hallock*, 546 U.S. at 349 (citation omitted). The fate of HIP 2.0 in its current form will be determined on remand, when HHS will have the opportunity to "rehabilitate [its] approval" of the program's extension or to reject the extension. *See Rose*, 2024 WL 3202342, at *27; *see also* Gov't Br. 22 ("On remand, HHS will reevaluate Indiana's various requests for waivers from statutory Medicaid requirements.").

Second, Indiana does not seek to appeal an issue that is "collateral" to or "completely separate from the merits of the action." *Hallock*, 546 U.S. at 349 (citation omitted). Instead, Indiana challenges the district court's order remanding for further consideration of whether HIP 2.0 should be extended, which "is hardly separable from the merits of the action." *Am. Haw. Cruises v. Skinner*, 893 F.2d 1400, 1403 (D.C. Cir. 1990). This is an appeal of the case itself.

And third, as already discussed, the district court's order will not be effectively unreviewable after final judgment. Following the remand proceedings, Indiana, as an intervenor, may offer arguments seeking to vindicate both HHS's new action and, in the alternative, HHS's 2020 approval decision. And as noted, Indiana will not face significant harm in the meantime because the district court has stayed its vacatur order, thus allowing HIP 2.0 to remain largely in effect. Under the circumstances, "the value of the interests that would be lost through rigorous application of a final judgment requirement" does not outweigh the benefits of strictly enforcing that requirement. *Digit. Equip.*, 511 U.S. at 878–79.

**3.**

Indiana next argues that our jurisdiction can be grounded in the district court's Rule 54(b) certification, which determined that "there is no just reason for delay of appellate review" and that its order was "immediately appealable." Reply Br. 33 (quoting J.A. 539–40). But the district court's issuance of the certification is insufficient to confer appellate jurisdiction. *See Sullivan v. Finkelstein*, 496 U.S. 617, 628 n.7 (1990) ("The label used by the District Court of course cannot control the order's appealability in this case, any more than it could when a district court labeled a nonappealable interlocutory order as a 'final judgment.'"); *see also Attias v. Carefirst, Inc.*, 969 F.3d 412, 418 (D.C. Cir. 2020) (holding that the court lacked jurisdiction over Rule 54(b)-certified claims).

Federal Rule of Civil Procedure 54(b) permits courts to certify partial final judgments "as to one or more, but fewer than all, claims or parties." The rule offers a "practical means" to appeal "without waiting for final decisions" on every distinct claim. *Attias*, 969 F.3d at 416 (citation omitted). "For an otherwise interlocutory order to be certified as a final judgment," three requirements must be met: "(1) The order must resolve a distinct claim for relief; (2) the order must be final with respect to that claim; and (3) the district court must permissibly determine that there is no just reason for delay in entering judgment." *Id.* at 417 (cleaned up).

Here, the district court entered judgment on count one of the plaintiff-beneficiaries' complaint (challenging the 2020 approval of a ten-year extension of HIP 2.0), while leaving unresolved the second count (challenging the 2023 letter decision that left the program in place despite "concerns"), as well as three other counts. J.A. 539–40. And it certified that

there was no just reason to delay an appeal of its order resolving count one. But Indiana fails to establish, as it must, that the remand order was "final" with respect to count one. Rule 54(b) effectively incorporates the final-judgment rule, and Indiana cannot get around the remand order's lack of finality. *See supra* sections II.A, B.1. Thus, the district court's Rule 54(b) certification does not affect our jurisdictional analysis.[3]

## III.

Finally, we pause to address a separate issue of unauthorized briefing. Although the government did not file a notice of appeal or cross-appeal in this case, it devotes the lion's share of its brief to arguing that the district court's remand order was erroneous on the merits and should be vacated. Because those arguments and that request for a judgment vacating the district court's decision are not properly before us, we strike those portions of the government's brief.

It is settled, black-letter law that "when an appellee attempts to overturn or modify a district court's judgment[,] . . . the appellee [must] file a cross-appeal."

---

[3] That does not mean that the district court's Rule 54(b) certification was issued in vain. As previously discussed, the government is permitted to appeal a remand order under the present circumstances even if the order is not final. *See supra* section II.A. Thus, if HHS had sought to appeal the district court's remand order vacating the 2020 program extension — even though the district court did not resolve the plaintiff-beneficiaries' claim challenging the 2023 letter decision — the Rule 54(b) certification would have enabled the appeal by confirming that the remand order resolved "a distinct claim for relief," and that there was "no just reason for delay[ing]" appellate review of that claim. *Attias*, 969 F.3d at 417 (cleaned up).

19

*Freeman v. B & B Assocs.*, 790 F.2d 145, 151 (D.C. Cir. 1986). "Absent a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record," but the appellee may not "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) (cleaned up). That rule is "inveterate and certain," *Greenlaw v. United States*, 554 U.S. 237, 245 (2008) (citation omitted); it dates to our nation's "earliest years," *id.* at 244–45 (citing *McDonough v. Dannery*, 3 Dall. 188, 198 (1796)); and it advances the important "institutional interests" of "fair notice and repose," *El Paso Nat. Gas*, 526 U.S. at 480. "Indeed, in more than two centuries of repeatedly endorsing the cross-appeal requirement, not a single one of [the Supreme Court's] holdings has ever recognized an exception to the rule." *Id.*

Here, Indiana appealed the district court's remand order, and the government responded by arguing that this court lacks jurisdiction. The government then made additional arguments that affirmatively challenge the district court's order and affirmatively requested relief vacating the district court's decision, without complying with the basic procedural requirement of filing its own notice of appeal. *See* Gov't Br. 17–19, 29–51. The government's merits arguments are therefore superfluous and improper. *See El Paso Nat. Gas*, 526 U.S. at 479–81 (holding that the court of appeals erred in addressing issues not properly raised by a cross-appeal); *Freeman*, 790 F.2d at 153 (holding that the court was precluded from considering an argument not properly raised by a cross-appeal). We are constrained to strike the offending material on pages 17–19 and 29–51 of the government's brief.

\* \* \*

In conclusion, we hold that the district court's order vacating HHS's approval of the extension of HIP 2.0 and remanding for further proceedings was not "final" under 28 U.S.C. § 1291.  Nor does Indiana's appeal of the remand order fall under any recognized exception that would allow us to exercise appellate jurisdiction.  We therefore dismiss Indiana's appeal.

*So ordered.*